**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EUGENE KUZNETSOV and DANIIAR ISAKOV, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BRAVURA GLASS AND MIRROR CORP. and KONSTANTIN GEYMAN, in his individual and professional capacity,<br><br>Defendants. | Civil Action No.: 1:20-cv-00726<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Eugene Kuznetsov and Daniiar Isakov (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, Faruqi & Faruqi, LLP, hereby allege as follows against Defendants Bravura Glass and Mirror Corp. ("Bravura" or the "Company") and Konstantin Geyman ("Geyman") (collectively, "Defendants"):

<u>**NATURE OF THE CLAIMS**</u>

1.      Defendants operate a glass and mirror fabrication company, specializing in the installation, servicing, and repair of glass and mirror objects in residential and commercial properties.

2.      Defendants engage in a common, willful, and deliberate policy and practice of failing to compensate Plaintiffs and other similarly situated employees at the minimum and overtime wage rates required by law.

3.      Specifically, Defendants employ a systemic policy where they reduce employees' cash wages to the nearest $20.00 to $50.00 increment, resulting in employees receiving zero compensation for a portion of the time they work for Defendants.

4.    For example, when an employee earns $778.50 in cash wages, Defendants unilaterally reduce the employee's cash wages to $750.00 or $760.00 and refuse to provide wages for the remainder of time that the employee worked.

5.    Additionally, Defendants require their employees to work fifty (50) to sixty (60) hours per week, however Defendants' employees are ***never*** paid any overtime wages for hours worked in excess of forty (40) in a workweek.

6.    Moreover, Defendants require their employees to work shifts that exceed ten (10) hours per day, but never pay employees applicable "spread of hours" pay.

7.    Defendants also routinely fail to pay employees on their statutorily provided pay days, instead paying them several days after their wages are due.

8.    Further, Defendants fail to provide their employees with Notices of Pay Rate and accurate wage statements, as required by law.

9.    Plaintiffs' claims against Defendants to redress these wrongs are brought, in part, under the FLSA as a collective action, pursuant to 29 U.S.C. § 216(b), and applicable regulations thereunder, on behalf of themselves and all other similarly situated Employees (defined *infra* at ¶ 30) employed by Defendants at any time during the full statute of limitations period.

10.    Plaintiffs' claims are also brought, in part, under the New York Labor Law ("NYLL"), and applicable regulations thereunder, as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of themselves and all other similarly situated Employees (defined *infra* at ¶ 30) employed by Defendants at any time during the full statute of limitations period.

## JURISDICTION AND VENUE

11.    Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has subject matter jurisdiction

over this action because it involves federal questions regarding the deprivation of Plaintiffs' rights under the FLSA.

12.    Pursuant to 28 U.S.C § 1367, this Court has supplemental jurisdiction over Plaintiffs' related claims arising under State law.

13.    Pursuant to 28 U.S.C. § 1391, venue is proper because Defendants' principal place of business is located in this District and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## PARTIES

### A.    Plaintiff Eugene Kuznetsov

14.    Plaintiff Eugene Kuznetsov is a resident of the State of New York and was employed by Defendants from in or around August 2018 through in or around November 10, 2019.

15.    At all relevant times, Mr. Kuznetsov was an "employee" within the meaning of all relevant statutes and regulations.

### B.    Plaintiff Daniiar Isakov

16.    Plaintiff Daniiar Isakov is a resident of the State of New York and was employed by Defendants from in or around July 15, 2018 through in or around August 16, 2019.

17.    At all relevant times, Mr. Isakov was an "employee" within the meaning of all relevant statutes and regulations.

### C.    Defendant Bravura Glass and Mirror Corp.

18.    Defendant Bravura Glass and Mirror Corp. is a domestic corporation with its principal place of business located at 2126 Flatbush Avenue, Brooklyn, New York 11234.

19.    At all relevant times, Bravura controlled and directed the terms of employment and compensation of Plaintiffs.

20.    At all relevant times, Bravura established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs including timekeeping, work allocation, task supervision, monitoring work product, payroll, and other employment practices that applied to them.

21.    At all relevant times, Bravura maintained and exercised its power to hire, fire, discipline, and promote Plaintiffs.

22.    At all relevant times, Bravura was Plaintiffs' "employer" within the meaning of all relevant statutes and regulations.

**D.    Defendant Konstantin Geyman**

23.    Defendant Konstantin Geyman owns and operates Bravura.

24.    At all relevant times, Mr. Geyman controlled and directed the terms of employment and compensation of Plaintiffs.

25.    At all relevant times, Mr. Geyman established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs including timekeeping, work allocation, task supervision, monitoring work product, payroll, and other employment practices that applied to them.

26.    At all relevant times, Mr. Geyman maintained and exercised his power to hire, fire, discipline, and promote Plaintiffs.

27.    At all relevant times, Mr. Geyman was Plaintiffs' "employer" within the meaning of all relevant statutes and regulations.

## FACTS

**A.    Background**

28.    Defendants own and operate a glass and mirror fabrication and delivery company in Brooklyn, New York.

29.    Defendants specialize in the fabrication and delivery of mirror and glass objects for installation, servicing, or repair in residential homes and commercial properties.

30.    Employees of Bravura hold various titles, including, *inter alia*: (i) Laborers; (ii) Glass Cutters; (iii) Glass Installers; (iv) Mechanics; and (v) Drivers (collectively, "Employees").

31.    Employees typically work anywhere between 50 and 60 hours per week.

**B.    Plaintiffs' Hours Tracked**

32.    To track the number of hours Employees work each day, Defendants require Employees to download a mobile application ("app") on their cell phones and are given a password to login.

33.    When Employees arrive to work each day, they access the app and a bar code is then displayed on their cell phone screens.

34.    Employees then place their cell phone screens up against a machine in the Company's warehouse ("Warehouse") that registers the bar code and records their clock in time.

35.    Employees undergo the same process at the end of the day when recording their clock out times.

36.    As evident from the Company's own records, Plaintiffs routinely worked fifty (50) to sixty (60) hours a week, but Defendants never paid Plaintiffs any overtime compensation for hours worked in excess of forty (40) in a workweek.

**C.**    **Failure to Pay Minimum Wage, Overtime, and Spread of Hours Wages**

37.    Defendants engage in a common pattern and practice of deliberately denying Employees their owed wages.

38.    Defendants systematically deny Employees wages in several ways.

39.    First, Defendants employ a policy where Defendants reduce employees' cash wages to the nearest $20.00 to $50.00 increment.

40.    For example, when an Employee earns $778.50 in cash wages for a workweek, Defendants reduce the Employee's cash wages to $750.00 or $760.00 and refuse to provide wages for the remainder of time that the Employee worked.

41.    Defendants' practice results in each Employee receiving *zero* compensation for a portion of the time that they work for Defendants.

42.    Second, despite working between 50 and 60 hours per week, Defendants never pay Employees any overtime wages for hours worked in excess of 40 hours in a workweek.

43.    Defendants' practice results in Employees being paid below Federal and State overtime wage rates for as many as 60 hours in a given week.

44.    Third, Defendants do not provide their Employees with "spread of hours" pay, i.e., an additional hour of pay at the applicable State minimum wage rate on each day where the length of interval between the beginning and end of an Employee's workday exceeds 10 hours.

**D.**    **Failure to Provide Notices of Pay Rate and Accurate Wage Statements**

45.    The NYLL also requires that Defendants provide employees, "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day

designated by the employer [ ]; the name of the employer; and 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.  NYLL § 195.

46.    Defendants never provide Employees with Notices of Pay Rate.

47.    Further, the NYLL requires that Defendants furnish their Employees with accurate wage statements with each payment of wages.

48.    Defendants never furnish Employees with accurate wage statements during the statutory period.

**E.    Late Payment of Wages**

49.    Throughout the statutory period, Defendants established a weekly pay period spanning Monday to Sunday, and designate Employees' regular pay day to be the following Monday of every week.

50.    Employees are either given a portion of their weekly wages via check and the rest in cash or Employees are paid wholly in cash.

51.    However, Defendants routinely fail to make Employees' wages available until several days after their regularly scheduled pay day.

**F.    Plaintiff Eugene Kuznetsov**

**i.    Background**

52.    Eugene Kuznetsov worked as a Glass Installer at Bravura from in or around August 2018 through in or around November 10, 2019.

53.    In this role, Mr. Kuznetsov was responsible for, *inter alia,* installing and servicing

glass and mirror objects such as windows and doors that the Company prepares at its Warehouse.

54.     Throughout his employment, Defendants provided Mr. Kuznetsov with a truck, tools, and instructions necessary to perform his duties.

55.     Each morning, Mr. Kuznetsov reported to the Warehouse to clock in, receive his assignments for the day, and pick up necessary equipment.

56.     Mr. Kuznetsov then traveled in a Company truck to designated job locations throughout New York City, Long Island, and New Jersey.

57.     After Mr. Kuznetsov completed an assignment, he proceeded to his next scheduled job location or to the Warehouse, where he would pick up necessary equipment and instruction for subsequent jobs.

58.     At the end of the day, Mr. Kuznetsov returned to the Warehouse to clock out utilizing the app on his cell phone.

59.     Throughout most of his employment, Defendants provided Mr. Kuznetsov a portion of his paid wages on a check and the remainder in cash.

60.     Upon his hiring, in August 2018, Defendants set Mr. Kuznetsov's regular rate of pay at $13.00 per hour, with his overtime rate at $19.50 per hour.

61.     Starting in or around October 2018, Defendants set Mr. Kuznetsov's regular rate of pay at $14.00 per hour, with his overtime rate at $21.00 per hour.

62.     Starting in or around February 2019, Defendants set Mr. Kuznetsov's regular rate of pay at $17.00 per hour, with his overtime rate at $25.50 per hour.

63.     From on or around September 1, 2019 to November 10, 2019, Defendants set Mr. Kuznetsov's regular rate of pay at $18.00 per hour, with his overtime rate at $27.00 per hour.

64.    However, at all relevant times, Defendants paid Mr. Kuznetsov at below his established regular rates and below the minimum wage by not paying all of his earned wages and never paying him overtime.

**ii.    Wage Violations**

65.    Mr. Kuznetsov routinely worked five to six days per week for approximately fifty (50) to sixty (60) hours every week.

66.    However, Defendants failed to pay Mr. Kuznetsov for all time worked in a workweek.

67.    Defendants routinely reduced Mr. Kuznetsov's cash wages to the nearest $20.00 to $50.00 increment, thus denying Mr. Kuznetsov any wages for a portion of the time that he worked.

68.    Further, Mr. Kuznetsov was *never* paid one and one-half times his regular rate of pay for any hours worked in excess of 40 hours in a workweek.

69.    Throughout his employment, Mr. Kuznetsov regularly worked shifts in excess of 10 hours in a day.

70.    Despite working shifts in excess of 10 hours in a day, Mr. Kuznetsov was *never* paid "spread of hours" pay.

71.    By way of example only, during Mr. Kuznetsov's first full week of employment, he worked approximately 55 hours, with four shifts exceeding 10 hours in length, and was paid all in cash in the amount of $700.00.

72.    Mr. Kuznetsov was not paid any overtime or spread of hours pay, and his regular rate of pay amounted to only $12.72 per hour – below the New York State minimum wage.

73.    For this work week, Mr. Kuznetsov should have been paid $520.00 in straight wages, $292.50 in overtime wages, and $52.00 in spread of hours wages, amounting to $864.50 in total compensation.

74.    For this week alone, Mr. Kuznetsov is owed $164.50 in unpaid wages ($864.50 – $700.00 = $164.50).

75.    As another example, attached hereto as Exhibit A is a copy of Mr. Kuznetsov's time records, which show that he worked 53 hours and 22 minutes (53.37) during the work week of Monday, June 17, 2019 through Friday, June 21, 2019 and that four of these shifts exceeded 10 hours in length.

76.    During this pay period, Mr. Kuznetsov should have been paid $17.00 per hour for all hours worked under 40, $25.50 per hour for all hours over 40, and spread of hours pay for the four shifts that exceeded 10 hours.

77.    As such, Defendants should have paid Mr. Kuznetsov $680.00 in straight time wages, $340.94 in overtime wages, and $60.00 in spread of hours wages, amounting to $1080.94 in total compensation for this pay period.

78.    Instead, Defendants provided Mr. Kuznetsov with a check for $200.10 and $700.00 in cash, for a total of $900.10 in compensation.

79.    Mr. Kuznetsov received *zero* compensation for over 25 minutes that he worked for Defendants and was paid absolutely no overtime or spread of hours for this pay period.

80.    For this week alone, Mr. Kuznetsov is owed $180.84 in unpaid wages ($1080.94 – $900.10 = $180.84).

81.    As another example, attached hereto as Exhibit B is a copy of Mr. Kuznetsov's time records, which show that he worked 51.54 hours during the work week September 1, 2019 to September 6, 2019 and that four of these shifts exceeded 10 hours.

82.    During this pay period, Mr. Kuznetsov should have been paid $18.00 per hour for all hours worked under 40, $27.00 per hour for all hours over 40, and spread of hours pay for the four shifts that exceeded 10 hours.

83.    As such, Defendants should have paid Mr. Kuznetsov a $720.00 in straight time wages, $311.58 in overtime wages, and $60.00 in spread of hours wages, amounting to $1,091.58 in total compensation for this pay period.

84.    Instead, Defendants provided Mr. Kuznetsov with a check for $200.10 and $700.00 in cash, for a total of $900.10 in compensation.

85.    Mr. Kuznetsov received *zero* compensation for over 1.5 hours that he worked for Defendants and was paid absolutely no overtime or spread of hours for this pay period.

86.    For this week alone, Mr. Kuznetsov is owed $191.48 in unpaid wages ($1,091.58 – $900.10 = $191.48).

87.    Defendants failed to pay Mr. Kuznetsov his proper wages every week during his 67-week tenure at the Company as required under both the FLSA and NYLL.

88.    Moreover, Defendants often paid Mr. Kuznetsov several days after his designated pay day.

89.    Indeed, Defendants frequently paid Mr. Kuznetsov on the Wednesday or Thursday subsequent to his designated pay day.

90.    Through his conversations with other Employees, Mr. Kuznetsov has learned that they too are paid in a similar manner as he was – they are also never compensated for all time that

they work in a workweek, they are never paid overtime when they work more than 40 hours in a week, they never receive "spread of hours" pay, and they are frequently paid after their regularly scheduled pay days.

91.    Further, Defendants never provided Mr. Kuznetsov with a Notice of Pay Rate.

92.    Defendants never provided Mr. Kuznetsov with accurate wage statements.

93.    In fact, from August 2018 through in or around November 10, 2019, Mr. Kuznetsov was not provided with any wage statements at all.

94.    Through his conversations with other Employees, Mr. Kuznetsov has learned that no one at the Company had ever received a Notice of Pay Rate or accurate wage statements.

**G.    Plaintiffs Daniiar Isakov**

    **i.    Background**

95.    Mr. Isakov worked as a Glass Cutter and Laborer at Bravura from in or around July 15, 2018 through in or around August 16, 2019.

96.    In this role, Mr. Isakov was responsible for, *inter alia*, preparing glass and mirror objects such as windows and doors at the Warehouse.

97.    Throughout his employment, Defendants provided Mr. Isakov with the tools and instructions necessary to perform his duties.

98.    Each morning, Mr. Isakov reported to the Warehouse to clock in utilizing the app on his cell phone.

99.    After clocking in, Mr. Isakov unloaded glass and mirror materials ordered by the Company from a third-party vendor to be used in the preparation of the Company's glass and mirror objects.

100.    Mr. Isakov carried the glass material to the Warehouse, which contained the Company's glass preparation equipment.

101.    Mr. Isakov then placed the glass material on a table and cut the glass using the Company's equipment to meet the size and shape specifications required by his employers depending on work orders the Company received.

102.    Once the glass met the size and shape specifications, Mr. Isakov loaded the finished product onto a Company truck to be delivered to a given job site for installation.

103.    Mr. Isakov then cleaned and swept the Warehouse and clocked out utilizing the app on his cell phone.

**ii.    Wage Violations**

104.    Mr. Isakov routinely worked five days per week for approximately fifty (50) to sixty (60) hours every week.

105.    However, Defendants failed to pay Mr. Isakov for all time worked in a workweek.

106.    Defendants rounded Mr. Isakov's cash wages down to the nearest $20.00 to $50.00 increment, resulting in Mr. Isakov receiving zero wages for a portion of the time that he worked for Defendants each workweek.

107.    Further, from in or around July 15, 2018 through in or around October 18, 2018, Defendants established Mr. Isakov's regular rate of pay at $12.00 per hour – which was below the State minimum wage rate of $13.00 per hour – for all hours worked under 40 hours in a workweek.

108.    From on or around October 18, 2018 until approximately December 15, 2018, Mr. Isakov's regular rate was supposed to be $13.00 per hour and his overtime rate was supposed to be $19.50 per hour.

109.    Additionally, from in or around December 15, 2018 through in or around February 15, 2019, Defendants established Mr. Isakov's regular rate of pay at $14.00 per hour – which was below the State minimum wage rate of $15.00 per hour – for all hours worked under 40 hours in a workweek.

110.    However, at all relevant times, Defendants paid Mr. Isakov at below even his established regular rates and below the minimum wage by not paying all of his earned wages and never paying him overtime.

111.    Moreover, despite regularly working 50 to 60 hours per week throughout his employment, Mr. Isakov was *never* paid overtime compensation for hours in excess of 40 in a workweek.

112.    Throughout his employment, Mr. Isakov worked approximately three to four shifts every week that exceeded 10 hours in length but was *never* paid spread of hours pay.

113.    Additionally, Defendants often paid Mr. Isakov a few days after his designated pay day.

114.    Further, Defendants never provided Mr. Isakov with a Notice of Pay Rate.

115.    Defendants never provided Mr. Isakov with accurate wage statements.

116.    In fact, from July 15, 2018 through in or around August 16, 2019, Mr. Isakov was not provided with any wage statements at all.

117.    Through his conversations with other Employees, Mr. Isakov has learned that they too are paid in a similar manner as he was – they are also never compensated for all time that they work in a workweek, they are never paid overtime when they work more than 40 hours in a week, they never receive "spread of hours" pay, and they are frequently paid after their regularly scheduled pay days.

118.    Through his conversations with other Employees, Mr. Isakov has learned that no one at the Company had ever received accurate wage statements or a Notice of Pay Rate.

## FLSA COLLECTIVE ACTION ALLEGATIONS

119.    Plaintiffs bring this action, in part, as a collective action under the FLSA and applicable regulations thereunder.

120.    Plaintiffs seek to maintain claims, pursuant to FLSA § 216(b), on behalf of themselves and all other individuals employed by Defendants at any time during the full statute of limitations period (the "FLSA Collective").

121.    At all relevant times, Plaintiffs and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, plans, and schemes, and were subject to Defendants' practices of: (i) failing to compensate Plaintiffs and the FLSA Collective at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek; and (ii) failing to timely pay wages owed.

122.    Throughout the full statute of limitations period, Defendants have been fully aware of the duties performed by Plaintiffs and the FLSA Collective, and that those duties were not exempt from the provisions of the FLSA.

123.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiffs and the FLSA Collective.

124.    As a result of Defendants' conduct, they are liable to Plaintiffs and the FLSA Collective for the full amount of their unpaid wages with interest, an additional equal amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiffs and the FLSA

Collective.

125.    While the exact number of the FLSA Collective is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are approximately 60 other similarly situated persons who were employed by Defendants during the full statute of limitations period.

126.    Plaintiffs are currently unaware of the identities of the members of the FLSA Collective.

127.    Accordingly, Defendants should be required to provide Plaintiffs with a list of all persons employed by Defendants during the full statute of limitations period, along with their last known addresses, telephone numbers, and email addresses, so Plaintiffs can give the members of the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate in it.

**CLASS ACTION ALLEGATIONS – NYLL CLASS**

128.    Plaintiffs bring this action, in part, as a class action under the NYLL and applicable regulations thereunder.

**A.    Class Definition**

129.    Plaintiffs seek to maintain claims, pursuant to FRCP 23, on behalf of themselves and a class of all other employees who have been employed by Defendants as *inter alia*, Laborers, Glass Cutters, Glass Installers, Mechanics and Drivers, during the full statute of limitations period (the "NYLL Class").    Excluded from the NYLL Class are Defendants' owners, officers, and directors.

130.    Plaintiffs allege, on behalf of themselves and the NYLL Class, that Defendants violated, *inter alia*, the NYLL by: (i) failing to compensate Plaintiffs and the NYLL Class at the

State minimum wage for all hours worked in a workweek; (ii) failing to compensate Plaintiffs and the NYLL Class at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek; (iii) failing to compensate Plaintiffs and the NYLL Class "spread of hours" pay for shifts in excess of 10 hours in a day; (iv) failing to timely pay wages owed; (v) failing to provide Notices of Pay Rate; and (vi) failing to furnish accurate wage statements.

131.    Plaintiffs and the NYLL Class have standing to seek such relief because of the adverse effects that Defendants' wage practices have had on them individually and as a group.

132.    The wage practices described in this Complaint are part of Defendants' normal course of conduct.

133.    The claims brought pursuant to the NYLL may be pursued by all similarly situated persons who do not opt out of the NYLL Class, pursuant to FRCP 23.

**B.    Requirements of Rule 23(a)**

**i.    Numerosity and Impracticability of Joinder**

134.    The members of the NYLL Class are so numerous that joinder of all members is impracticable.

135.    While the exact number of the members of the NYLL Class is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are approximately 120 members of the NYLL Class.

136.    Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**ii.    Common Questions of Law and Fact**

137.    Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the NYLL Class and predominate over any questions only affecting the members of the NYLL Class individually.

138.    Indeed, there are few, purely individual issues in this action.

139.    The questions of law and fact that are common to Plaintiffs and the NYLL Class include, but are not limited to:

(a)    Whether Plaintiffs and the NYLL Class worked over 40 hours per week;

(b)    Whether Defendants failed to pay Plaintiffs and the NYLL Class all minimum wages owed to them;

(c)    Whether Defendants failed to pay Plaintiffs and the NYLL Class all overtime compensation owed to them;

(d)    Whether Plaintiffs and the NYLL Class worked shifts greater than 10 hours per day;

(e)    Whether Defendants failed to pay Plaintiffs and the NYLL Class all "spread of hours" pay owed to them;

(f)    Whether Defendants failed to timely pay Plaintiffs and the NYLL Class their wages owed;

(g)    Whether Defendants failed to provide Plaintiffs and the NYLL Class with Notices of Pay Rate;

(h)    Whether Defendants failed to furnish accurate wage statements to Plaintiffs and the NYLL Class; and

(i)    Whether Plaintiffs and the NYLL Class are entitled to liquidated damages and injunctive relief.

140.    Therefore, the common question requirement of FRCP 23(a) is satisfied.

**iii.    Typicality of Claims and Relief Sought**

141.    Plaintiffs' claims are typical of the claims of the members of the NYLL Class they

seek to represent.

142.    Plaintiffs and the NYLL Class work, or have worked, for Defendants and are, or were, subject to the same compensation policies and practices.

143.    The wage practices suffered by Plaintiffs, and the damages resulting therefrom, are sadly typical of Defendants' treatment of their employees generally, and of the NYLL Class specifically.

144.    Therefore, the typicality requirement of FRCP 23(a) is satisfied.

**iv.     Adequacy of Representation**

145.    Plaintiffs will fairly and adequately protect the interests of the NYLL Class because their interests are coextensive and aligned with those of the members of the NYLL Class.

146.    Plaintiffs have no interests adverse to the NYLL Class they seek to represent and have retained competent and experienced counsel.

147.    Plaintiffs are willing and able to represent the NYLL Class as fairly and vigorously as they pursue their similar individual claims.

148.    Plaintiffs have retained counsel who are qualified and experienced in employment class action litigation and who are able to meet the demands necessary to litigate a class action of this size and complexity.

149.    The combined interests, experience, and resources of Plaintiffs and their counsel to competently litigate the individual and NYLL Class claims at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a).

**C.    Requirements of Rule 23(b)(1)**

150.    Without certification of the NYLL Class, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent

adjudications and conflicting obligations.

151.    Accordingly, certification of the NYLL Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the NYLL Class, and Defendants.

152.    By filing this Complaint, Plaintiffs are preserving the rights of the NYLL Class with respect to the statute of limitations on their claims.

153.    Therefore, not certifying a class would substantially impair and/or impede the remaining members of the NYLL Class's ability to protect their interests.

**D.    Requirements of Rule 23(b)(2)**

154.    Defendants acted on grounds, described herein, generally applicable to Plaintiffs and the NYLL Class by denying Plaintiffs and the NYLL Class minimum wages, overtime wages, "spread of hours" wages, failing to pay wages on time, and failing to furnish Notices of Pay Rate and accurate wage statements.

155.    These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiffs and the NYLL Class as a whole.

156.    Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of minimum wages, overtime wages, "spread of hours" wages, timely payment of wages, Notices of Pay Rate and accurate wage statements.

157.    Declaratory and injunctive relief are the factual and legal predicates for Plaintiffs and the NYLL Class's entitlement to monetary and non-monetary remedies for such wage violations.

158.    Accordingly, injunctive and declaratory relief are among the predominant forms of

relief sought in this case.

**E.    Requirements of Rule 23(b)(3)**

159.    The common issues of fact and law affecting Plaintiffs' claims and those of the NYLL Class – including, without limitation, the common issues identified in the paragraphs above – predominate over issues affecting only individual claims.

160.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims and the claims of the NYLL Class.

161.    The cost of proving Defendants' pattern and practice of denying minimum, overtime, and other wages makes it impractical for the members of the NYLL Class to pursue their claims individually.

162.    This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of all members of the NYLL Class (they must have worked for Defendants as Employees during the statutory period), as well as the common questions of law and fact described herein.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: FAILURE TO PAY OVERTIME**
*(On Behalf of Plaintiffs and the FLSA Collective)*

163.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

164.    During the full statutory period, Plaintiffs and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C. §§ 201, *et seq.*, and applicable regulations thereunder.

165.    The FLSA requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay and at a rate not

less than one and one-half times the federal minimum wage for all hours worked in excess of forty (40) hours in a workweek.

166.    Plaintiffs and the FLSA Collective were not exempt from the requirement that Defendants pay them overtime under the FLSA, and they are entitled to be paid overtime by Defendants for all hours worked in excess of forty (40) hours in a workweek during the full statute of limitations period.

167.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40) hours in a workweek.

168.    As a result of Defendants' failure to compensate Plaintiffs and the FLSA Collective at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

169.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA and/or applicable regulations thereunder.

170.    Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### VIIOLATIONS OF THE FLSA: LATE PAYMENT OF WAGES
*(On Behalf of Plaintiffs and the FLSA Collective)*

171.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

172.    During the full statutory period, Plaintiffs and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and all applicable regulations thereunder.

173.    The FLSA requires covered employers, including Defendants, to pay employees all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends.

174.    Plaintiffs and the FLSA Collective were not exempt from the requirement that Defendants timely pay them their wages.

175.    During the statute of limitations period, Defendants have engaged in a policy and practice of failing to pay Plaintiffs and the FLSA Collective all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends.

176.    As a result of Defendants' failure to pay Plaintiffs and the FLSA Collective all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends, Defendants have violated the FLSA and/or applicable regulations thereunder.

177.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

178.    Defendants' violations of the FLSA have significantly harmed Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY MINIMUM WAGE
*(On Behalf of Plaintiffs and the NYLL Class)*

179.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

180.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all

applicable regulations thereunder.

181.    The NYLL requires covered employers, including Defendants, to compensate employees at a rate not less than the State minimum wage for all hours worked in a workweek.

182.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants pay them minimum wages under the NYLL, and they are entitled to be paid minimum wages by Defendants for all hours worked in a workweek during the full statute of limitations period.

183.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the NYLL Class at a rate not less than the State minimum wage for all hours worked in a workweek.

184.    As a result of Defendants' failure to compensate Plaintiffs and the NYLL Class at a rate not less than the State minimum wage for all hours worked in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

185.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

186.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY OVERTIME WAGES**
*(On Behalf of Plaintiffs and the NYLL Class)*

187.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

188.    During the full statutory period, Plaintiffs and the NYLL Class were protected by

the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

189.    The NYLL requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek and at a rate not less than one and one-half times the applicable State minimum wage for all hours worked in excess of 40 hours in a workweek.

190.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants pay them overtime under the NYLL, and they are entitled to be paid overtime by Defendants for all hours worked in excess of forty (40) hours in a workweek during the full statute of limitations period.

191.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the NYLL Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek.

192.    As a result of Defendants' failure to compensate Plaintiffs and the NYLL Class at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40) hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

193.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL and/or applicable regulations thereunder.

194.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the

NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: LATE PAYMENT OF WAGES**
*(On Behalf of Plaintiffs and the NYLL Class)*

195.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

196.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

197.    The NYLL requires covered employers, including Defendants, to pay employees all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends.

198.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants timely pay them their wages.

199.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to pay Plaintiffs and the NYLL Class all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends.

200.    As a result of Defendants' failure to pay Plaintiffs and the NYLL Class all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends, Defendants have violated the NYLL and/or applicable regulations thereunder.

201.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

202.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the

NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: NOTICE OF PAY RATE**
*(On Behalf of Plaintiffs and the NYLL Class)*

203.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

204.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations thereunder.

205.    The NYLL also requires that Defendants provide employees, "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer [ ]; the name of the employer; and 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.  NYLL § 195.

206.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants provide them with Notices of Pay Rate.

207.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide Plaintiffs and the NYLL Class with Notices of Pay Rate.

208.    Indeed, Defendants have never provided Plaintiffs and the NYLL Class with a Notice of Pay Rate.

209.    As a result of Defendants' failure to provide Notices of Pay Rate to Plaintiffs and the NYLL Class, Defendants have violated, *inter alia*, NYLL § 195.

210.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper notices to Plaintiffs and the NYLL Class in accordance with the NYLL.

211.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover $50 for each workday the violation occurred, or continued to occur, not to exceed $5,000, plus attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO FURNISH ACCURATE**
**WAGE STATEMENTS**
***(On Behalf of Plaintiffs and the NYLL Class)***

212.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

213.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations thereunder.

214.    The NYLL requires covered employers, including Defendants, to "furnish each employee with a statement with every payment of wages, listing the following:  the dates of work covered by that payment of wages;  name of employee;  name of employer;  address and phone number of employer;  rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  gross wages;  deductions;  allowances, if any, claimed as part of the minimum wage;  and net wages."  NYLL § 195.

215.    Plaintiffs and the NYLL Class were not exempt from the requirement that their employer provide them with accurate wage statements.

216.    Throughout the full statute of limitations period, Defendants have failed to provide Plaintiffs and the NYLL Class with accurate wage statements.

217.    Indeed, Defendants have never provided Plaintiffs and the NYLL Class with accurate wage statements.

218.    As a result of their failure to furnish accurate wage statements to Plaintiffs and the NYLL Class, Defendants have violated, *inter alia*, NYLL § 195.

219.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper wage statements to Plaintiffs and the NYLL Class in accordance with the NYLL.

220.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover $250 for each workday the violation occurred, or continued to occur, not to exceed $5,000, plus attorneys' fees, costs, and all other available damages to the greatest extent permitted by law.

**EIGHTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: SPREAD OF HOURS PAY**
*(On Behalf of Plaintiffs and the NYLL Class)*

221.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

222.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.,* and 650, *et seq.*, as well as all applicable regulations thereunder, including, without limitation, the Minimum Wage Order for Miscellaneous Industries and Occupations, 12 N.Y.C.R.R. § 142-1.1, *et seq.*

223.    The NYLL and/or applicable regulations thereunder require employers, including Defendants, to furnish each of their employees one additional hour of pay at the basic minimum wage rate on each day during which the length of the interval between the beginning and end of the employee's work day, or "spread of hours," exceeds 10 hours.

224.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants provide them with "spread of hours" pay.

225.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide "spread of hours" pay to Plaintiffs and the NYLL Class.

226.    As a result of Defendants' failure to furnish "spread of hours" pay to Plaintiffs and the NYLL Class, Defendants have violated, *inter alia*, the NYLL and/or applicable regulations thereunder.

227.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the NYLL Class, respectfully request that this Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal and State law;

B.    Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    Declare this action to be maintainable as a collective action pursuant to 29 U.S.C.

§ 216, and direct Defendants to provide Plaintiffs with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D.    Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiffs with a list of all members of the NYLL Class, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

E.    Designate Plaintiffs Eugene Kuznetsov and Daniiar Isakov as the representatives of the NYLL Class, and their counsel of record as class counsel;

F.    Designate Plaintiffs Eugene Kuznetsov and Daniiar Isakov as the representatives of the FLSA Collective, and their counsel of record as class counsel;

G.    Determine the damages sustained by Plaintiffs and the NYLL Class as a result of Defendants' violations of the NYLL, and award those damages against Defendants and in favor of Plaintiffs and the NYLL Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

H.    Determine the damages sustained by Plaintiffs and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiffs and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

I.    Award Plaintiffs, the FLSA Collective, and the NYLL Class an additional equal amount as liquidated damages because Defendants' violations were without a good faith basis;

J.      Award Plaintiffs, the FLSA Collective, and the NYLL Class their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

K.      Grant Plaintiffs, the FLSA Collective, and the NYLL Class such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves, the FLSA Collective, and the NYLL Class, hereby demand a trial by jury on all issues of fact and damages.

Dated: February 10, 2020              **FARUQI & FARUQI, LLP**

By: */s/ Innessa M. Huot*
    Innessa M. Huot
    Patrick J. Collopy
    Camilo M. Burr (not yet admitted)

685 Third Avenue, 26th Floor
New York, New York 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
ihuot@faruqilaw.com
pcollopy@faruqilaw.com
cburr@faruqilaw.com

*Attorneys for Plaintiffs*