**FARUQI & FARUQI LLP**
ATTORNEYS AT LAW

NEW YORK    CALIFORNIA    DELAWARE    GEORGIA    PENNSYLVANIA

Innessa M. Huot                                                             December 14, 2020
ihuot@faruqilaw.com

**VIA ECF**

Magistrate Judge Lois Bloom
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   **Re:** *Kuznetsov, et al. v. Bravura Glass and Mirror Corp., et al.*, No: 1:20-cv-726 (LB)

Dear Judge Bloom:

  We represent Plaintiffs Eugene Kuznetsov ("Kuznetsov") and Daniiar Isakov ("Isakov") and Opt-in Plaintiffs Andrei Savelev ("Savelev"), Ermek Omurzakov ("Omurzakov"), and Edward Moseley ("Moseley") (collectively, "Plaintiffs") in the above-referenced matter and write on consent with Defendants Bravura Glass and Mirror Corp. ("Bravura") and Konstantin Geyman (collectively, "Defendants") to respectfully request approval of the parties' proposed settlement of this action (the "Settlement"), as required by *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). As detailed below, the Settlement is reasonable under each of the five *Wolinksy* factors (*see Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012)) and complies with the *Cheeks* admonitions. *See Cheeks*, 796 F.3d at 206.

**I. Background**

  Defendants own and operate a glass and mirror fabrication and delivery company in Brooklyn, New York where Plaintiffs were employed. *See* Docket Entry ("DE") 1 ("Complaint") ¶¶ 1, 28. Indeed, Kuznetsov worked at Bravura as a glass installer from approximately August 1, 2018 through November 10, 2019. *Id*. ¶ 52. Isakov worked at Bravura as both a Glass Cutter and Laborer from approximately July 15, 2018 through August 16, 2019. *Id*. ¶ 95. Savelev worked at Bravura as a Laborer from approximately April 27, 2019 through March 20, 2020. *See* Huot Decl. ¶ 5.[1] Omurzakov worked at Bravura as a Laborer from approximately June 3, 2019 through January 27, 2020. *Id*. Moseley worked at Bravura as a Mechanic from approximately June 15, 2019 through October 8, 2019. *Id*.

  On February 10, 2020, Plaintiffs initiated this action by filing a Complaint alleging Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") by, *inter alia*, failing to properly pay them overtime wages and failing to timely pay them their wages. *See* Complaint. Specifically, Plaintiffs allege that Defendants failed to pay them at a rate of one and one-half times their regular rate of pay for approximately 10 to 20 hours of overtime they worked each week and routinely failed to make Plaintiffs' wages available until several days after their

---

[1] Hereinafter, all references to Declaration of Innessa M. Huot in Support of Settlement Approval and Award of Attorneys' Fees and Expenses shall be referred to as "Huot Decl.".



regularly scheduled pay day.  *Id.* ¶¶ 42-43, 49-51, 163-78; *see* Huot Decl. ¶ 11.  Plaintiffs also brought similar claims under the New York Labor Law ("NYLL") alleging that Defendants failed to timely pay them their wages, failed to pay them minimum and overtime wages, failed to provide them spread of hours pay, and failed to furnish them with Notices of Pay Rate and accurate wage statements.  *See* Complaint ¶¶ 37-51, 179-227; Huot Decl. ¶ 12.  On April 8, 2020, Defendants filed their Answer, in which they denied all liability for Plaintiffs' claims and asserted multiple affirmative defenses.  *See* DE 12; Huot Decl. ¶ 13.

Shortly thereafter, the parties engaged in a thorough investigation and an informal exchange of documents relating to Plaintiffs' claims.  *Id.* ¶ 14.  The parties conferred numerous times as to the strengths, weaknesses, and merits of Plaintiffs' claims and Defendants' defenses and exchanged case law supporting their respective positions.  *Id.* ¶ 15.  Based on the records exchanged and their thorough investigation, Plaintiffs' counsel calculated Plaintiffs' damages and the parties engaged in good faith settlement discussions, exchanging several rounds of offers, demands, counter-offers, and counter-demands, but were unable to resolve the case at that time.  *Id.* ¶ 16.

The parties have engaged in extensive settlement discussions throughout litigation, exchanging numerous proposals, damage calculations, analyses of relevant case law, and additional documents.  *Id.* ¶¶ 7-9, 14-16.  On October 21, 2020, the parties participated in a full day mediation session with Ira Cure, Esq., an experienced and well-respected private mediator.  *Id.* ¶ 17.  Although the parties were unable to resolve the case at that time, they nonetheless made significant progress towards a resolution.  *Id.* ¶ 18.  Thereafter, the parties proceeded to exchange additional documents and engaged in further negotiations, in further attempt to resolve this case.  *Id.*  As a result of the progress the parties made during their first mediation session, the parties participated in *two additional mediation sessions* with Mr. Cure, which took place on October 28, 2020 and November 12, 2020.  *Id.* ¶ 19.  After months of negotiations and *three* constructive mediation sessions, the parties agreed to resolve Plaintiffs' claims for a sum of $135,000.00 on the terms set forth in the Settlement Agreement and Release (the "Settlement") now before this Court.  *Id.* ¶ 20; *see also id.* at Exhibit A ("Ex. A").[2]

**II.     The Proposed Settlement is Fair, Reasonable, and Consistent with *Cheeks***

Plaintiffs submit that this Settlement is especially fair and reasonable as it provides for a **81.7% recovery** of all their best-case scenario damages for their claims of unpaid wages, late payment of wages, and wage notice violations, including liquidated damages and statutory damages – even assuming all factual and legal assumptions are made in Plaintiffs' favor.  *See* Huot Decl. ¶¶ 22-23, 37.  Indeed, this assumes that Plaintiffs prevail on all of their wage claims and Defendants lose on all of their defenses.  *Id.* ¶ 23.

To assess the reasonableness of the Settlement, the Court must consider the totality of the circumstances, including, but not limited to, examining the five so-called *Wolinsky* factors: (1)

---

[2] Hereinafter, all exhibits attached to the Huot Decl. will be referred to as "Ex. ___."



Plaintiffs' range of possible recovery; (2) the extent to which the Settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the Settlement is the product of arm's-length negotiations between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335-36. Additionally, courts scrutinize the "admonitions" set forth in *Cheeks* – specifically, that overbroad releases and stringent confidentiality provisions are to be avoided. *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824 (SIL), 2015 WL 6550560, at *1 (E.D.N.Y. Oct. 28, 2015). The Settlement satisfies the five *Wolinksy* factors and does not conflict with the *Cheeks* admonitions.

### A. Plaintiffs Will Receive A Significant Portion of Their Maximum Possible Recovery Under the Settlement

The first *Wolinsky* factor supports a finding that the Settlement is fair and reasonable, as the Settlement provides Plaintiffs with a substantial portion of the maximum possible recovery that they would obtain if they litigated this matter through summary judgment and/or trial. Indeed, where all facts are viewed in light most favorable to Plaintiffs, the Settlement results in Plaintiffs receiving **100%** of all economic damages for unpaid and late wages and statutory damages for wage notice violations, as well as an **additional 33%** of their liquidated damages. Huot Decl. ¶ 22.

This recovery reflects a reasonable compromise and significantly exceeds recoveries recently approved in other wage-and-hour settlements within this Circuit. *See Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) ("[A] recovery figure of 22.8% seems within the bounds of reasonableness[.]"); *Wang v. Masago Neo Asian Inc.*, No. 14-CV-6249(DRH)(ARL), 2016 WL 7177514, at *2 (E.D.N.Y. Sept. 26, 2016) (recommending approval of settlement where settlement provided a 52% recovery of potential damages); *Griffin v. Aldi, Inc.*, No. 5:16-cv-00354, DE 109 (N.D.N.Y. Nov. 15, 2018) (approval of settlement of 28% of maximum damages); *Cohetero v. Stone & Tile, Inc.*, No. 16-CV-4420, 2018 WL 565717, at *7 (E.D.N.Y. Oct. 28, 2015) (approval of settlement for "approximately two-thirds of [ ] claimed, actual unpaid wages, which is not unreasonable in light of the risks of litigation.").

To ascertain Plaintiffs' best-case scenario for recovery, Plaintiffs' counsel analyzed and evaluated the merits of the various claims at issue. Huot Decl. ¶ 24. Plaintiffs' counsel conducted extensive interviews with Plaintiffs and reviewed documents obtained from both Plaintiffs and Defendants, including company records, correspondence, paystubs, payroll documents, and time records. *Id.* ¶ 25. Based on this analysis and investigation, Plaintiffs' counsel analyzed the strengths and weaknesses of Plaintiffs' claims and the range of possible recoveries. *Id.* ¶ 26.

Here, Plaintiffs allege that Defendants failed to properly pay them earned wages. Complaint ¶¶ 37-44. Specifically, Plaintiffs allege that Defendants denied them earned wages by failing to pay them minimum and overtime wages for hours over 40 in a workweek and failed to provide spread of hours pay. *Id.* ¶¶ 42-44. Similarly, Plaintiffs allege that Defendants paid them late by not making their wages available until several days after their regularly scheduled pay days.



*Id.* ¶¶ 49-51.  Additionally, Plaintiffs allege that Defendants never furnished them with Notices of Pay Rate and accurate wage statements during the statutory period.  *Id.* ¶¶ 45-48.

Defendants contest the validity of Plaintiffs' contentions, their claimed damages, and the assumptions underlying such claims and calculations, and Plaintiffs dispute the defenses and assumptions raised and relied upon by Defendants.  Huot Decl. ¶ 27.  First, while Defendants' records show that at certain times Plaintiffs worked in excess of 40 hours in a workweek, Defendants dispute the number of weeks Plaintiffs worked over 40 hours as well as the total number of hours over 40 that Plaintiffs performed compensable work.  *Id.* ¶ 28.  Defendants further claim that a portion of Plaintiffs' alleged working hours is not compensable working time and should not be counted towards Defendants overtime obligations.  *Id.* ¶ 29.  Lastly, Defendants object to Plaintiffs' assertions that they failed to timely pay Plaintiffs.  *Id.* ¶ 30.

The parties vehemently dispute these issues and have conferred on numerous occasions regarding the legal and factual issues supporting their respective positions.  *Id.* ¶ 31.  All parties agree that these issues involve fact intensive inquiries regarding the nature of Plaintiffs' work and whether Plaintiffs received a bona fide lunch break.  *Id.* ¶ 32.  Among other things, these inquiries require an assessment of Plaintiffs' work activities and testimony as to the number of hours Plaintiffs worked.  *Id.*  The parties further agree that these issues likely require credibility determinations that significantly bear on liability and damages.  *Id.*  Given the fact-intensive nature of the issues in dispute, had this matter not resolved, it likely would have proceeded to trial, at a minimum, on the issue of how many hours Plaintiffs performed compensable work.  *Id.* ¶ 33.

Nevertheless, for settlement purposes only, the parties assumed the main disputed issues concerning unpaid wages to the benefit of the Plaintiffs.  *Id.* ¶ 34.  Indeed, the parties assumed that: (1) all hours recorded in Defendants' time records were compensable; (2) Defendants failed to timely pay Plaintiffs approximately once per month; and (3) Defendants never furnished Plaintiffs with Notices of Pay Rate and accurate wage statements.  *Id.*  Indeed, for settlement purposes only, the parties assumed that Plaintiffs would prevail on each of these claims and that Defendants would lose on all of their defenses – a very favorable assumption.  *Id.* ¶ 35.

Making all favorable assumptions to Plaintiffs' benefit, Plaintiffs assert that their damages for all wage claims and notice violations amount to $165,243.22.  *Id.* ¶ 36.  This Settlement of $135,000.00 provides Plaintiff with an ***81.7%*** recovery of all such best-case scenario damages, including liquidated damages and statutory damages.  *Id.* ¶ 37.  Put another way, this settlement provides for a ***100%*** recovery of all economic damages for unpaid and late wages, and all statutory damages for wage notice violations, as well as an ***additional 33%*** of their liquidated damages.  *Id.*

Given the fact-intensive nature of the claims, and the risk that Defendants might potentially prevail on at least some of their defenses, Plaintiffs' counsel believes that this Settlement reflects a substantial portion of the maximum possible recovery that Plaintiffs would obtain if they litigated this matter through summary judgment and/or trial and is a remarkable result for Plaintiffs.  *Id.* ¶ 38.



    **B.    By Entering Into the Settlement, the Parties Avoid Significant Burden in Establishing Their Claims and the Attendant Risks of Continued Litigation**

The second and third *Wolinsky* factors are met because both parties will avoid the significant expense of discovery, motion practice, and the risk of a lengthy, fact-specific trial. Courts have repeatedly recognized that cases where plaintiffs must prove that they engaged in compensable, overtime work are both fact-intensive and challenging, as it is difficult to establish the parties' claims and defenses. *See, e.g.*, *Riedel v. Acqua Ancien Bath N.Y. LLC*, No. 14 Civ. 7238, 2016 WL 3144375, at *7 (S.D.N.Y. May 19, 2016) (recognizing risk in establishing liability for wage claims); *Long v. HSBC USA Inc.*, No. 14 Civ. 6233(HBP), 2015 WL 5444651, at *4 (S.D.N.Y. Sept. 11, 2015) ("[T]he claims and defenses are fact-intensive and present risks, including the potential inability to prove the number of hours worked and amount of unpaid overtime wages[.]").

Here, the burden will be especially great because the parties maintain drastically different assessments on the number of hours Plaintiffs worked, whether all such work time was compensable, and whether Defendants timely paid Plaintiffs their wages. Huot Decl. ¶ 39. Put differently, further litigation would result in "additional expense, including costly depositions [], motion practice, trial preparation, trial and appeal, that could meaningfully decrease possible recovery for plaintiff[]." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 299–300 (E.D.N.Y. 2015); *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420–21 (S.D.N.Y. 2014) (finding, in an FLSA action, that "the fact-intensive nature of their claims mean that litigation would likely be lengthy, complex, and expensive"); Huot Decl. ¶ 40. Given the fact-intensive analysis of the issues in dispute, the parties have saved themselves the costs and risks associated therewith, thus satisfying the second and third factors delineated by *Wolinsky*. *Id.*

    **C.    The Settlement Is the Product of Arm's-Length Bargaining Between Experienced Counsel and There Is No Possibility of Fraud or Collusion**

The fourth and fifth factors – whether the Settlement is the product of an arm's-length bargaining process and the possibility of fraud or collusion – also support a conclusion that the Settlement is fair and reasonable. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF) (DCF), 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234(LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approval granted where settlement "was the result of arm's length negotiations, which were undertaken in good faith by counsel") (internal quotation marks omitted). All parties in this matter are represented by counsel experienced in litigating employment litigation. Huot Decl. ¶¶ 2-3, 41; Ex. B (Firm Resume). Counsel for the parties have worked diligently to advance their clients' positions and negotiate a fair resolution. Huot Decl. ¶ 42.

Significantly, the parties participated in ***three mediation sessions*** with the experienced and well-respected mediator Ira Cure on October 21, 2020, October 28, 2020, and November 12, 2020, which ultimately resulted in the resolution of this matter. *Id*. ¶¶ 17-19, 43. This history and



Magistrate Judge Lois Bloom
Page 6

litigation process leave no doubt that counsel for the parties negotiated at arm's-length and that the possibility of fraud or collusion is non-existent. *See Hernandez v. Anjost Corp.*, No. 11 Civ. 1531(AT), 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a 'presumption that the settlement achieved meets the requirements of due process.'" (quoting *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011)); *Vasquez v. TGD Grp., Inc.*, No. 14-CV-7862 (RA), 2016 WL 3181150, at *3 (S.D.N.Y. June 3, 2016) (same).

Further, the Settlement does not contain any of the provisions admonished in *Cheeks*. Following *Cheeks*, courts have looked unfavorably upon FLSA settlement agreements that contain confidentiality agreements and broad releases where workers release claims unrelated to their claims for unpaid wages. *See Jones v. Smith*, 319 F. Supp. 3d 619, 626 (E.D.N.Y. 2018) (court could not approve FLSA settlement "given its confidentiality provision"); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 178 (S.D.N.Y. 2015) ("The rationale for rejecting confidential FLSA settlements is particularly strong, since sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair.") (internal quotation marks omitted); *Wolinsky*, 900 F. Supp. 2d at 337-41 (court did not approve FLSA settlement with confidentiality agreement); *Alvarez v. Michael Anthony George Const. Corp.*, No. 11 CV 1012(DRH)(AKT), 2015 WL 3646663, at *2 (E.D.N.Y. June 10, 2015) (court did not approve FLSA settlement as the language of the release was "far too sweeping to be fair and reasonable"); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592(LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014) (court denied approval based on broad release in FLSA settlement agreement).

Critically, this Settlement does not contain any terms that would militate against the Court approving it. For example, the Settlement does not contain any confidentiality provision or non-disparagement clause and allows Plaintiffs to openly and freely discuss their employment experiences, their lawsuit, their claims, and this Settlement with anyone. *See generally* Ex. A; *see also Ezpino v. CDL Underground Specialists, Inc.*, No. 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *2-3 (E.D.N.Y. June 30, 2017) (citing *Cheeks*, 796 F. 3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision nor does it contain a non-disparagement clause").

Likewise, Plaintiffs' release here is limited to FLSA and NYLL claims "related to their work with Defendants." *See* Ex. A § 2. The parties are mindful that courts have expressed concern over widespread, sweeping releases of claims. *See, e.g.*, *Cheeks*, 796 F.3d at 206. However, this release is not overly broad, as evidenced by the approval of settlement agreements with similar language by courts within the Second Circuit. *See, e.g.*, *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-CV-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (release was fair and reasonable since it does not release any future claims). The release is further justified because Plaintiff has raised claims not only under the FLSA, but also under the NYLL. Accordingly, a broader release than in a typical FLSA is warranted. *See, e.g.*, *Plizga v. Little Poland Rest. Inc.*, No. 15-CV-08820(LAK)(BCM), 2016 WL 9307474, at *6 (S.D.N.Y. July 18, 2016) (approving release of claims related to employment because "[w]here 'the settlement only



binds the parties to the suit,' and the plaintiff can make an informed decision about the value of any unpleaded claims she potentially has against her employer, 'as compared to the class action context, there is a much smaller likelihood that other claims will be unfairly extinguished.'") (quoting *Souza v. 65 St. Marks Bistro*, No. 15-CV-327(JLC), 2015 WL 7271747, at *6 (S.D.N.Y. Nov. 6, 2015)).

In sum, this Settlement provides for a remarkable recovery for Plaintiffs, mitigates significant risks and costs of litigation, is the product of arm's-length bargaining amongst experienced counsel, does not contain a confidentiality provision, non-disparagement clause, or overbroad release, is exceedingly fair and reasonable, and represents a fair compromise of bona fide disputes. As such, the Court should approve this Settlement.

### III.    The Proposed Attorneys' Fees and Costs Are Fair and Reasonable

Plaintiffs request that the Court approve Plaintiffs' counsel's fees of $44,250.76, which is one-third (33.33%) of the Settlement Amount after costs are deducted – 32.77% before the deduction. Huot Decl. ¶ 44; *see Navarrete v. Milano Mkt. Place, Inc.*, No. 18-CV-7858 (OTW), 2019 WL 4303347, at *2 (S.D.N.Y. Sept. 11, 2019) (the attorneys' fee award of "one-third of the settlement sum is reasonable and consistent with fees upheld by courts in this District"). The requested fee amounts to only 51% of Plaintiffs' counsel's lodestar of $86,212.50 in this case and is exceedingly fair and reasonable under all applicable laws. Huot Decl. ¶ 49.

The requested fee is consistent with the one-third contingency fees frequently approved as part of FLSA settlements in this Circuit and in this District. *See, e.g.*, *Singh v. MBD Constr. Mgmt., Inc.*, No. 16 Civ. 5216(HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate"); *Ezpino*, 2017 WL 3037483, at *3 ("[a] one-third contingency fee is a commonly accepted fee in this Circuit.") (quoting *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126(NGG)(VMS), 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014)); *Abrar v. 7-Eleven, Inc.*, No. 14-cv-6315(ADS)(AKT), 2016 WL 1465360, at *3 (E.D.N.Y. Apr. 14, 2016) (approving attorneys' fees for one third of the total settlement as fair and reasonable and collecting cases).

The requested fees are further justified by the circumstances of this action. Plaintiffs' counsel was retained on a purely contingency basis and, as a result, has advanced all costs and shouldered all the risks in this litigation. Huot Decl. ¶ 45. Such risks have included a possibility that Plaintiffs would recover no damages at all, given the highly fact-intensive nature of their wage claims. *Id.* ¶ 46.

Awarding the requested fees furthers the FLSA's remedial purposes by recognizing the risks attendant to relatively small wage claims like Plaintiffs'. *See Asare v. Change Grp. of N. Y., Inc.*, No. 12 Civ. 3371(CM), 2013 WL 6144764, at *22 (S.D.N.Y. Nov. 18, 2013) ("The FLSA and NYLL are remedial statutes designed to protect the wages of workers. Fair compensation for attorneys who prosecute those rights by taking on such litigation furthers the remedial purpose of those statutes."); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005)



Magistrate Judge Lois Bloom
Page 8

("[D]ue to the relatively small settlement involved here, the requested fee award" of $50,000 out of a $125,000 settlement fund, or 40% of the settlement, "is necessary to compensate counsel adequately."). Put differently, awarding "fees sufficient to compensate counsel for at least a substantial portion of the work it has performed" ensures that counsel will continue to "be willing to take on future small-scale [ ] actions such as this." *Id.*; *see also In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003) (noting that there is an inverse relationship between a fee award and the amount of the settlement).

The reasonableness of the requested fee is further confirmed by applying the lodestar method as a "crosscheck." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *Flores v. Anjost Corp.*, No. 11 Civ. 1531(AT), 2014 WL 321831, at *9 (S.D.N.Y. Jan. 29, 2014); *In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145(KMW), 2014 WL 185628, at *10 (S.D.N.Y. Jan. 14, 2014); *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751(RRM)(RER), 2017 WL 2778029, at *1 (E.D.N.Y. June 26, 2017). The lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Id.*

As of December 14, 2020, Plaintiffs' counsel has billed 222.40 hours on this matter, amounting to $86,212.50 in fees if calculated pursuant to the lodestar. *See* Huot Decl. ¶ 48; Ex. C (contemporaneously-kept billing records). The lodestar is calculated based on hourly rates for Plaintiffs' counsel that have been approved by other courts in the Second Circuit and across the country. Huot Decl. ¶¶ 52-54; *see also Feliciano, et al. v. Metro. Transp. Auth., et al.*, No. 18-cv-00026-VSB, DE 97-1, 99 (S.D.N.Y. Feb. 21, 2018) (approving hourly rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Pazdniakou v. CoolTech Mech. Corp., et al.*, No. 1:19-cv-05434-SJB, DE 18, 21 (E.D.N.Y. Mar. 23, 2020) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Ackerman v. N.Y. Hosp. Med. Ctr. of Queens*, No. 702965/2013, DE 71, 80 (N.Y. Sup., Queens Cty. June 24, 2020) (noting Plaintiffs' counsels' substantial experience in wage and hour litigation and their skill and commitment to representing the Settlement Class's interests and approving hourly rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Reeves, et al. v. La Pecora Bianca, Inc., et al.*, No. 151153/2018, DE 108 (N.Y. Sup., N.Y. Cty. June 11, 2020) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, $300 for Mr. Burr, and $180 for Mr. Aloise); *Georgiev, et al. v. Shapiro, et al.*, No. 1:19-cv-00122 (JPO), DE 41-6, 47 (S.D.N.Y. Oct. 2, 2019) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Morrell, et al. v. NYC Green Transp. Grp., LLC, et al.*, No. 1:18-cv-00918-PKC-VMS (E.D.N.Y. May 8, 2019) (approving hourly rates of $500 for Ms. Huot, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Griffin, et al. v. Aldi, Inc.*, No. 5:16-cv-354 (LEK/ATB), DE 104-4, 109 ¶¶ 18, 20 (N.D.N.Y. Nov. 15, 2018) (approving a lodestar multiplier of 1.96, noting Plaintiffs' counsels' expertise in complex wage and hour litigation, commending Plaintiffs' counsel on the quality of their work, and approving hourly rates of $500 for Ms. Huot, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Alam v. O&S Gen. Contractors Corp.*, No. 18-cv-2069 (LDH)(JO), DE 19-4, 20 (E.D.N.Y. Aug. 17, 2018) (approving hourly rates of $600 for Ms. Huot, $450 for Mr. Hartzband, $400 for Mr. Collopy, and $310 for Mr. Aloise); *Guttentag, et al. v. Ruby Tuesday, Inc.*, No. 12 Civ. 3041 (AT),



Magistrate Judge Lois Bloom
Page 9

DE 107-8, 109 (S.D.N.Y. Oct. 2, 2014) (approving hourly rates of $875-$625 for partners, $585-$555 for senior associates, $390-$375 for junior associates, $315 for head paralegal, and $275-$245 for other paralegals); *Foster, et al. v. L-3 Commc'ns EoTech, Inc., et al.*, No. 15-cv-03519-BCW, DE 140-1, 155 (W.D. Mo. July 7, 2017) (approving hourly rates of $550 for Ms. Huot, $375 for Mr. Collopy, and $310 for Mr. Aloise); *Run Them Sweet, LLC, v. CPA Global, LTD, et al.*, No. 16 CV 1347, DE 108-4, 114 (E.D. Va. Oct. 6, 2017) (approving hourly rate of $550 for Ms. Huot); *March, et al. v. First Choice Med., PLLC*, No. 15-cv-3669 (GRB) (E.D.N.Y. Mar. 7, 2017) (court approved one-third fee after lodestar, based on $500 per hour rate for Ms. Huot, used as cross-check).

Additionally, courts have previously noted that "[a] reasonable hourly rate is 'the rate a paying client would be willing to pay.'" *HVT, Inc, v. Port Auth. of N.Y. and N. J.*, No. 15 Civ. 5867(MKB) (VMS), 2018 WL 6079932, at *1 (E.D.N.Y. Nov. 21, 2018) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). A meaningful portion of Plaintiffs' counsel's practice is non-contingency cases where clients in fact pay on an hourly basis at the following rates: $500 per hour for Ms. Huot, $425 per hour for Mr. Hartzband, $350 per hour for Mr. Collopy, $325 for Mr. Burr, $175 per hour for head paralegal Mr. Aloise, and $150 per hour for other paralegals. Huot Decl. ¶ 47. Working on the instant matter on a contingency basis required Plaintiffs' counsel to expend considerable time and resources that could have been otherwise allocated towards non-contingency, hourly work. *Id.* Nevertheless, Plaintiffs' counsel undertook prosecuting this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. *Id.*

The requested fee award of $44,250.76 represents a **negative multiplier** of 0.51 times of Plaintiffs' counsel's lodestar of $86,212.50. *Id.* ¶ 49. Indeed, the requested fee award is only 51% of Plaintiffs' counsel's actual lodestar. *Id.* Put differently, Plaintiffs request approval of attorneys' fees amounting to only slightly more than half of the market value of the hourly work that has been invested in this action to bring it to resolution. As such, the requested attorneys' fees are reasonable.

Further, Plaintiffs request the Court approves reimbursement of costs and expenses incurred by Plaintiffs' counsel in furtherance of this matter. Plaintiffs' counsel has incurred $2,247.73 in actual costs and expenses for filing fees, service costs, legal research, mediation expenses, and postage. *Id.* at ¶¶ 58-59. These expenses are reasonable, as well as incidental and necessary to the litigation; therefore, their reimbursement under the Settlement should be approved. *See Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).



Magistrate Judge Lois Bloom
Page 10

   Accordingly, Plaintiffs' request for approval of $44,250.76 in attorneys' fees and $2,247.76 in unreimbursed expenses, for a total of $46,624.62 as compensation for Plaintiffs' counsel's work and their costs in this matter, is reasonable.

**IV.** **<u>Conclusion</u>**

   Accordingly, the parties jointly request that the Court approve of the Settlement, So Order the Stipulation and [Proposed] Order Approving the Settlement and Dismissing the Case, and have it entered on the docket by the Clerk of the Court.

   We thank Your Honor for the Court's time and consideration.

                    Respectfully submitted,

                    Innessa M. Huot

Encl.
cc: All Counsel of Records

685 Third Avenue   New York, NY 10017   Phone: 212.983.9330   Fax: 212.983.9331   EmployeeRightsCounsel.com   FaruqiLaw.com