# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENE KUZNETSOV and DANIIAR ISAKOV, on behalf of themselves and others similarly situation,<br><br>       Plaintiffs,<br>v.<br><br>BRAVURA GLASS AND MIRROR CORP. and KONSTANTIN GEYMAN, in his individual and professional capacity,<br><br>       Defendants. | Civil Case No.: 1:20-cv-726 (LB)<br><br>**DECLARATION OF INNESSA M. HUOT IN SUPPORT OF SETTLEMENT APPROVAL AND AWARD OF ATTORNEYS' FEES AND EXPENSES** |

I, Innessa M. Huot, declare as follows:

1. I am a partner of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm"). I submit this declaration in support of Plaintiffs' application for Settlement Approval and Award of Attorneys' Fees (the "Settlement") in connection with services rendered in this case, as well as the reimbursement of expenses incurred by my firm in connection with this litigation. I have personal knowledge of the matters set forth herein based upon my active supervision and participation in all material aspects of this litigation.

2. The Faruqi Firm is a national law firm with offices in New York, Pennsylvania, California, Delaware, and Georgia. The Faruqi Firm's practice focuses on complex and class action litigation, involving employment, consumer, antitrust, financial, corporate governance, and securities matters. The Faruqi Firm has extensive experience in the litigation, trial, and settlement of complex class actions.

3. I am the head of the Faruqi Firm's Employment Practice Group and manage attorneys in the firm's multiple offices throughout the country. I have served as lead and co-lead counsel in numerous class and collective actions nationwide. Some of my more recent public

settlements include: *Feliciano, et al. v. Metropolitan Transportation Authority, et al.,* No. 18-cv-00026-VSB (S.D.N.Y. Feb. 21, 2020) ($5.4 million collective action settlement for unpaid wages and overtime); *Reeves, et al. v. La Pecora Bianca, Inc, et al.,* No. 151153/2018 (N.Y. Sup. Ct. June 11, 2020) ($462,500 class action settlement resolving NYLL claims); *Ackerman v. New York Hospital Medical Center of Queens*, No. 702965/2013 (N.Y. Sup. Ct. June 24, 2020) ($550,000 class action settlement for unpaid wages under the NYLL); *Morrell, et al. v. NYC Green Transp. Grp., LLC, et al.*, No. 1:18-cv-00918-PKC-VMS (E.D.N.Y. May 8, 2019) ($700,000 settlement of FLSA and NYLL overtime claims); *Izzio, et al. v. Century Golf Partners Mgmt., L.P.*, 3:14-cv-03194-M (N.D. Tex. Feb. 13, 2019) ($1.425 million settlement of FLSA and NYLL claims for over 280 class members); *Griffin, et al. v. Aldi, Inc.*, No. 16-cv-354 (LEK/ATB) (N.D.N.Y. Nov. 15, 2018) ($9.8 million settlement of FLSA and NYLL overtime claims); *Run Them Sweet, LLC v. CPA Global LTD, et al.*, No. 1:16-cv-1347 (E.D. Va. Oct. 6, 2017) ($5.6 million settlement for 2,917 class members); *Strong, et al. v. Safe Auto Ins. Grp., Inc., et al.*, Case No. 2:16-cv-765 (S.D. Ohio Aug. 28, 2017) ($250,000 class action settlement for unpaid overtime and statutory damages); *Foster, et al. v. L-3 Commc'ns EoTech, Inc., et al.*, No. 6:15-cv-03519-BCW (W.D. Mo. July 7, 2017) ($51 million class action settlement); *March, et al. v. First Choice Med., PLLC*, No. 15-cv-3669 (GRB) (E.D.N.Y. Mar. 7, 2017) ($110,000 recovery for hourly employees claiming unpaid overtime).

4. Eugene Kuznetsov and Daniiar Isakov first contacted the Faruqi Firm in November 2019 regarding the unlawful employment practices of Defendants Bravura Glass and Mirror Corp. and Konstantin Geyman (together, "Defendants"). Since then, Andrei Savelev, Ermek Omurzakov, and Edward Moseley joined the case as Opt-in Plaintiffs (together with Eugene Kuznetsov and Daniiar Isakov, "Plaintiffs").

5. Mr. Kuznetsov worked at Bravura as a glass installer from approximately August 1, 2018 through November 10, 2019. Mr. Isakov worked at Bravura as both a Glass Cutter and Laborer from approximately July 15, 2018 through August 16, 2019. Mr. Savelev worked at Bravura as a Laborer from approximately April 27, 2019 through March 20, 2020. Mr. Omurzakov worked at Bravura as a Laborer from approximately June 3, 2019 through January 27, 2020. Mr. Moseley worked at Bravura as a Mechanic from approximately June 15, 2019 through October 8, 2019.

6. The Faruqi Firm ("Plaintiffs' counsel") was retained on a purely contingency basis, advancing all the costs and shouldering all the risk of litigation.

7. Thereafter, Plaintiffs' counsel engaged in an extensive pre-suit investigation of Plaintiffs' claims, including interviewing Plaintiffs numerous times to go over the details of their claims and their records, regularly speaking with them over the phone, and reviewing records they provided regarding their employment with Defendants.

8. Plaintiffs' counsel reviewed and analyzed voluminous documents pertaining to the Plaintiffs, such as compensation documents, time records, time files, paystubs, correspondence, and notes, and extracted pertinent information for use in the litigation.

9. Based on these records, and the diligent investigation conducted, Plaintiffs' counsel prepared a preliminary damages calculation to assess Defendants' exposure to damages for each claim being raised in this case.

10. On February 10, 2020, Plaintiffs initiated this action by filing a Complaint, alleging that Defendants violated the Fair Labor Standards Act ("FLSA") by, *inter alia*, failing to pay them overtime wages and failing to timely pay them their wages. *See* Docket Entry ("DE") 1.

11.     Specifically, Plaintiffs alleged that Defendants failed to pay them at a rate of one and one-half times their regular rate of pay for approximately 10 to 20 hours of overtime they worked each week and routinely failed to make their wages available until several days after their regularly scheduled pay day.

12.     Plaintiffs also brought claims under the New York Labor Law ("NYLL") alleging Defendants failed to timely pay them their wages, failed to pay them minimum and overtime wages, failed to provide them spread of hours pay, and failed to furnish them with Notices of Pay Rate and accurate wage statements.

13.     On April 8, 2020, Defendants filed their Answer, in which they denied all liability for Plaintiffs' claims and asserted multiple affirmative defenses. *See* DE 12.

14.     Shortly thereafter, the parties engaged in a thorough investigation and an informal exchange of documents relating to Plaintiffs' claims.

15.     The parties conferred numerous times as to the strengths, weaknesses, and merits of Plaintiffs' claims and Defendants' defenses and exchanged case law supporting their respective positions.

16.     Based on the records exchanged and their thorough investigation, Plaintiffs' counsel calculated Plaintiffs' damages and the parties engaged in good faith settlement discussions, exchanging several rounds of offers, demands, counter-offers, and counter-demands, but were unable to resolve the case at that time.

17.     Significantly, on October 21, 2020, the parties participated in a full day mediation session with Ira Cure, Esq., an experienced and well-respected private mediator.

18.     Although the parties were unable to resolve the case at that time, they nonetheless made significant progress towards a resolution of this matter. Thereafter, the parties proceeded to

exchange additional documents and engaged in further negotiations, in further attempts to resolve this case.

19. As a result of the progress the parties made during their first mediation session, the parties participated in *two additional mediation sessions* with Mr. Cure, which took place on October 28, 2020 and November 12, 2020.

20. After months of negotiations and *three* constructive mediation sessions, the parties agreed to resolve Plaintiffs' claims for a sum of $135,000, on the terms reflected in the Settlement now before this Court.

21. A true and correct copy of the fully executed Settlement Agreement is attached hereto as Exhibit A.

22. The Settlement is exceedingly fair and reasonable as it provides Plaintiffs with an *81.7% recovery* of all their best-case scenario damages for their claims of unpaid wages, late payment of wages, and wage notice violations, including liquidated damages and statutory damages. The settlement results in Plaintiffs receiving *100%* of their economic damages for unpaid and late wages and statutory damages for wage notice violations, as well as an *additional 33%* of their liquidated damages.

23. These damages presume that all factual and legal assumptions are made in Plaintiffs' favor and further assume that Plaintiffs will prevail on all of their claims for unpaid wages and Defendants will lose on all of their defenses.

24. To ascertain Plaintiffs' best-case scenario recovery amount, Plaintiffs' counsel analyzed and evaluated the merits of the various claims at issue.

25. Plaintiffs' counsel conducted extensive interviews with Plaintiffs and reviewed documents obtained from both Plaintiffs and Defendants, including company records,

5

correspondence, paystubs, payroll documents, and time records.

26. Based on this analysis and investigation, Plaintiffs' counsel assessed the strengths and weaknesses of Plaintiffs' claims and calculated the range of possible recoveries.

27. Defendants dispute the claims asserted by Plaintiffs, their calculation of damages, and the assumptions underlying such claims and calculations. Likewise, Plaintiffs dispute the defenses and assumptions raised and relied upon by Defendants.

28. First, while Defendants' records show that at certain times Plaintiffs worked in excess of 40 hours in a workweek, Defendants dispute the number of weeks Plaintiffs worked over 40 hours as well as the total number of hours over 40 that Plaintiffs performed compensable work.

29. Additionally, Defendants further claim that a portion of Plaintiffs' alleged working hours is not compensable working time and should not be counted towards Defendants overtime obligations.

30. Lastly, Defendants object to Plaintiffs' assertions that they failed to timely pay Plaintiffs.

31. The parties vehemently dispute these issues and have conferred on numerous occasions regarding the legal and factual issues supporting their respective positions.

32. All parties agree that these issues involve fact intensive inquiries regarding the nature of Plaintiffs' work and whether Plaintiffs received a bona fide lunch break. Among other things, these inquiries require an assessment of Plaintiffs' work activities and testimony as to the number of hours Plaintiffs worked. The parties further agree that these issues likely require credibility determinations that significantly bear on liability and damages.

33. Given the fact-intensive nature of the issues in dispute, had this matter not resolved, it likely would have proceeded to trial, at a minimum, on the issue of how many hours Plaintiffs performed compensable work.

34. Nevertheless, for settlement purposes only, the parties assumed the main disputed issues to the benefit of Plaintiffs. Indeed, the parties assumed that: (1) all hours recorded in Defendants' time records were compensable; (2) Defendants failed to timely pay Plaintiffs approximately once per month; and (3) Defendants never furnished Plaintiffs with Notices of Pay Rate and accurate wage statements.

35. Indeed, for settlement purposes only, the parties assumed that Plaintiffs would prevail on all of their claims and that Defendants would lose on all of their defenses – a very favorable assumption.

36. Making all favorable assumptions to Plaintiffs' benefit, Plaintiffs assert that their damages for all wage claims and notice violations amount to $165,243.22. The breakdown of the damages are as follows:

| DAMAGES FOR WAGE VIOLATIONS | |
|---|---|
| Unpaid Wages and Late Payment of Wages Violations | $76,819.66 |
| Liquidated Damages for Unpaid Wages | $45,273.56 |
| Wage Notice Violations | $43,150.00 |
| Total Damages = | $165,243.22 |

37. The Settlement of $135,000.00 provides Plaintiffs with an *81.7% recovery* of all such best-case scenario damages, including liquidated damages and statutory damages. Put another way, this Settlement provides for a *100%* recovery of all economic damages for unpaid

7

and late wages, and all statutory damages for wage notice violations, and an ***additional 33%*** recovery of liquidated damages.

38.  Given the fact-intensive nature of the claims, and the risk that Defendants might potentially prevail on at least some of their defenses, Plaintiffs' counsel believes that this Settlement reflects a substantial portion of the maximum possible recovery that Plaintiffs would obtain if they litigated this matter through summary judgment and/or trial and is a remarkable result for Plaintiffs.

39.  Here, the burden of establishing the parties' claims and defenses will be especially great because the parties maintain drastically different assessments on the number of hours Plaintiffs worked, whether all such work time was compensable, whether Defendants timely paid Plaintiffs their wages.

40.  Put differently, had the parties not settled, we and counsel for Defendants would have had to take numerous depositions, analyze thousands of pages of records, and exchanged vast amounts of electronically stored information to assess these fact intensive issues. Given the fact-intensive analysis of the issues in dispute, the parties have saved themselves the costs and risks associated therewith.

41.  All parties in this matter are represented by counsel experienced in employment litigation. Attached hereto as Exhibit B is a true and correct copy of Faruqi & Faruqi, LLP's Firm Resume.

42.  Both we and counsel for Defendants have worked diligently to advance our clients' respective positions and negotiate a fair resolution.

43.  The Settlement is not the product of fraud or collusion. On the contrary, even at its early stages, the disputes between the parties have been contentious. By way of example, the

parties participated in *three mediation sessions* with the experienced and well-respected mediator Ira Cure on October 21, 2020, October 28, 2020, and November 12, 2020, which ultimately resulted in the resolution of this matter.

44. In connection with the instant submission, Plaintiffs request that the Court approve Plaintiffs' counsel's fees of $44,250.76, which is one-third (33.33%) of the Settlement after costs are deducted – 32.77% before the deduction

45. Plaintiffs' counsel was retained on a purely contingency basis and, as a result, has advanced all costs and shouldered all the risks in this litigation.

46. Such risks have included a possibility that Plaintiffs would recover no damages at all, given the highly fact-intensive nature of their wage claims.

47. A meaningful portion of our practice is non-contingency cases, where clients pay on an hourly basis at rates that are equal to those billed in the current case – *i.e.*, $500 per hour for work performed by myself (Innessa M. Huot); $425 per hour for work performed by Alex J. Hartzband; $350 per hour for work performed by Patrick J. Collopy; $325 per hour for work performed by Camilo M. Burr; $175 per hour for work performed by head paralegal Anthony J. Aloise, and $150 per hour for work performed by other support staff. Working on the instant matter on a contingency basis required Plaintiffs' counsel to expend considerable time and resources that could have been otherwise allocated towards non-contingency, hourly work. Nevertheless, we undertook prosecuting this case on a purely contingency fee basis and advanced all the costs in the litigation, without any assurance of payment for our services or reimbursement of our expenses.

48. As of December 14, 2020, my firm has billed 222.40 hours on this matter, amounting to $86,212.50 in fees if calculated pursuant to the lodestar.

49. The requested fee award of $44,250.76 represents a *negative multiplier* of 0.51 times of Plaintiffs' counsel's lodestar of $86,212.50. Indeed, the requested fee award is only 51% of Plaintiffs' counsel's actual lodestar and is exceedingly reasonable.

50. A summary of Plaintiffs' counsel's total lodestar is attached hereto as Exhibit C.

51. The below chart details the amount of time spent by attorneys and professional support staff from my firm who were involved in this litigation, as well as the rates used for the above lodestar calculation.

| Faruqi & Faruqi Time Records Summary 1:20-cv-726-LB | | | |
|---|---|---|---|
| **ATTORNEY/STAFF** | **HOURS** | **REGULAR RATE** | **TOTAL** |
| **Partners** | | | |
| Huot, Innessa M. | 93.50 | $500.00 | $46,750.00 |
| **Associates** | | | |
| Hartzband, Alex J. | 4.80 | $425.00 | $2,040.00 |
| Collopy, Patrick, J. | 51.50 | $350.00 | $18,025.00 |
| Burr, Camillo | 45.80 | $325.00 | $14,885.00 |
| **Paralegals** | | | |
| Aloise, Anthony, J. | 19.70 | $175.00 | $3,447.50 |
| Behnke, Derek | 7.10 | $150.00 | $1,065.00 |
| **TOTALS** | **222.40** | | **$86,212.50** |

52. Attorney Innessa M. Huot is a partner and the head of the Faruqi Firm's Employment Practice Group. In non-contingency cases, I regularly bill $500 per hour for my work. In this case, I also billed at my regular rate of $500 per hour. Attorney Alex J. Hartzband is a Senior Associate at the Faruqi Firm's Employment Practice Group and regularly bills $425 per hour in non-contingency cases. In this case, Mr. Hartzband also billed at his regular rate of $425 per hour. Attorney Patrick J. Collopy is an Associate at the Faruqi Firm's Employment Practice Group and regularly bills $350 per hour in non-contingency cases. In this case, Mr.

Collopy also billed at his regular rate of $350 per hour. Attorney Camilo M. Burr is an Associate at the Faruqi Firm's Employment Practice Group and regularly bills $325 per hour in non-contingency cases. In this case, Mr. Burr also billed at his regular rate of $325 per hour. Anthony J. Aloise is the Employment Practice Group's head paralegal and regularly bills $175 per hour in non-contingency cases. In this case, Mr. Aloise also billed at his regular rate of $175 per hour.[1] The remaining professional support staff at the Faruqi Firm, including Derek Behnke, regularly bill at $150 per hour in non-contingency cases; Mr. Behnke billed at his regular rate in this case.

53. These hourly rates for Ms. Huot, Mr. Hartzband, Mr. Collopy, Mr. Burr, Mr. Aloise, and the Faruqi Firm's other professional support staff have been recently approved by other courts in the Second Circuit and across the country. *See, e.g., Feliciano, et al. v. Metro. Transp. Auth., et al.*, No. 18-cv-00026-VSB, DE 97-1, 99 (S.D.N.Y. Feb. 21, 2018) (approving hourly rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Pazdniakou v. CoolTech Mech. Corp., et al.*, No. 1:19-cv-05434-SJB, DE 18, 21 (E.D.N.Y. Mar. 23, 2020) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Ackerman v. N.Y. Hosp. Med. Ctr. of Queens*, No. 702965/2013, DE 71, 80 (N.Y. Sup., Queens Cty. June 24, 2020) (noting Plaintiffs' counsels' substantial experience in wage and hour litigation and their skill and commitment to representing the Settlement Class's interests and approving hourly rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Reeves, et al. v. La Pecora Bianca, Inc., et al.*, No. 151153/2018, DE 108 (N.Y. Sup., N.Y. Cty. June 11, 2020) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, $300 for Mr. Burr, and $180 for Mr. Aloise);

---

[1] Mr. Aloise was paramount in this case. In addition to his regular paralegal duties, Mr. Aloise managed the document review process in this case. The review process was centralized through Mr. Aloise to streamline organization and avoid duplication.

11

*Georgiev, et al. v. Shapiro, et al.*, No. 1:19-cv-00122 (JPO), ECF Nos. 41-6, 47 (S.D.N.Y. Oct. 2, 2019) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Morrell, et al. v. NYC Green Transp. Grp., LLC, et al.*, No. 1:18-cv-00918-PKC-VMS (E.D.N.Y. May 8, 2019) (approving hourly rates of $500 for Ms. Huot, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Griffin, et al. v. Aldi, Inc.*, No. 5:16-cv-354 (LEK/ATB), ECF Nos. 104-4, 109 ¶¶ 18, 20 (N.D.N.Y. Nov. 15, 2018) (approving a lodestar multiplier of 1.96, noting Plaintiffs' counsel's expertise in complex wage and hour litigation, commending Plaintiffs' counsel on the quality of their work, and approving hourly rates of $500 for Ms. Huot, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Alam v. O&S Gen. Contractors Corp.*, No. 18-cv-2069 (LDH)(JO), ECF Nos. 19-4, 20 (E.D.N.Y. Aug. 17, 2018) (approving hourly rates of $600 for Ms. Huot, $450 for Mr. Hartzband, $400 for Mr. Collopy, and $310 for Mr. Aloise); *Guttentag, et al. v. Ruby Tuesday, Inc.*, No 12 Civ. 3041 (AT), ECF Nos. 107-8, 109 (S.D.N.Y. Oct. 2, 2014) (approving hourly rates of $875-$625 for partners, $585-$555 for senior associates, $390-$375 for junior associates, $315 for head paralegal, and $275-$245 for other paralegals); *Foster, et al. v. L-3 Commc'ns EoTech, Inc., et al.*, No. 15-cv-03519-BCW, ECF Nos. 140-1, 155 (W.D. Mo. July 7, 2017) (approving hourly rates of $550 for Ms. Huot, $375 for Mr. Collopy, and $310 for Mr. Aloise); *Run Them Sweet, LLC, v. CPA Global, LTD., et al.*, No. 16 CV 1347, ECF Nos. 108-4, 114 (E.D. Va. Oct. 6, 2017) (approving hourly rates of $550 for Ms. Huot); *March, et al. v. First Choice Med., PLLC*, No. 15-cv-3669 (GRB) (E.D.N.Y. Mar. 7, 2017) (court approved one-third fee after lodestar, based on $500 per hour rate for Ms. Huot, used as cross-check).

54. Indeed, these rates, and even higher ones for Faruqi Firm partners, associates, and professional support staff have been deemed reasonable and approved in the Second Circuit and across the country. *See, e.g., Rodriguez v. CitiMortgage, Inc.*, Case No. 11-cv-4718, ECF Nos.

61-2, 71 (S.D.N.Y. Oct. 6, 2015) (approving partner rate of $950-$775, associates at $625-$425; and paralegals at $340-$260); *Rossi v. Proctor & Gamble Co.*, No. 11-7238 (JLL), ECF No. 76-4, 2013 WL 5523098, at *10 (D.N.J. Oct. 3, 2013) ($850-$650 partners, $535-$375 for associates, and $265-$235 for paralegals); *Milliron v. T-Mobile USA*, No. 08-cv-04149-JLL-ES, ECF No. 65-3, 2009 U.S. Dist. LEXIS 101201 (D.N.J. Sept. 10, 2009) ($675-$450 for partners and $235 for paralegals); *McIntyre v. Pedder*, No. 3:12-cv-00213-MOC-DCK, ECF No. 142-4, 2016 WL 5109167 (W.D.N.C. Sept. 19, 2016) ($725 for partners and $425-$325 for associates); *In re Titanium Dioxide Antitrust Litig.*, No. 10-CV-00318 (RDB), ECF No. 546-12, 2013 WL 6577029 (D. Md. Dec. 13, 2013) ($725-$675 for partners and $585-$400 for associates); *In re Geron Corp. Sec. Litig.*, No. 3:14-CV-01224-CRB, ECF Nos. 129-5, 135 (N.D. Cal. July 21, 2017) ($795 for partners and $550-$375 for associates); *In re Dynavax Tech. Corp. Sec. Litig.*, No. 3:13-cv-02796-CRB, ECF Nos. 149-4, 156 (N.D. Cal. Feb 10, 2017) ($850-$550 for partners and $550-$400 for associates, and $375-$260 for paralegals); *Forcellati v. Hyland's, Inc.*, No. 2:12-CV-01983 ODW (MRW), ECF No. 292-3, 2017 WL 6514678 (C.D. Cal. Aug. 14, 2017) ($950-$550 for partners, $560-$400 for associates, and $375-$260 for paralegals); *Astiana v. Kashi Co.*, No. 11-CV-1967-H (BGS), ECF Nos. 229-4, 242, 2014 U.S. Dist. LEXIS 127624 (S.D. Cal. Sept. 2, 2014) ($875-$675 for partners, $510-$375 for associates, and $315-$245 for paralegals); *In re Am. Apparel S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 WL 10212865, at *24 (C.D. Cal. July 28, 2014) ($735-600 for partners); *In re Alexia Foods, Inc. Litig.*, No. 4:11-cv-06119 PJH, ECF Nos. 55-2, 66 (N.D. Cal. Dec. 12, 2013) ($875-$650 for partners and $450-$390 for associates); *In re Haier Freezer Consumer Litig.*, No. C 11-02911 EJD, ECF Nos. 87-3, 90 (N.D. Cal. Oct. 25, 2013) ($850-$645 per hour for partners and $535-$375 for associates); *Cox v. Clarus Mktg. Grp., LLC.*, ECF No. 30-5, 291 F.R.D. 473, 483 (S.D. Cal. 2013) ($850-$625 for partners and $535-$390 for

associates); *In re Shop-Vac Mktg. & Sales Practices Litig.*, No. 2380, 2016 WL 7178421, at *16 (M.D. Pa. Dec. 9, 2016) ($750 for partner); *Aron v. Crestwood Midstream Partners LP*, No. 4:15-CV-1367, ECF No. 60-4, 2016 US Dist. LEXIS 152427, at *28-32 (S.D. Tex. Oct. 14, 2016) ($795-$775 for partners, $450 for associates, and $375-$275 for paralegals).

55. Time expended in preparing the section of this Declaration and the *Cheeks* Letter for Settlement Approval relating to attorneys' fees and costs has not been included in this lodestar.

56. In the exercise of billing discretion, I have not included de minimis time and have removed time that I considered duplicative.

57. No travel time was included in the Lodestar.

58. Throughout this litigation, my firm has incurred $2,247.73 in actual costs and expenses for, *inter alia*, filing fees, service costs, legal research, mediation expenses, and postage. These types of expenses are customarily charged to the firm's clients.

| **Faruqi & Faruqi Expense Records Summary 1:20-cv-726-LB** ||
| --- | --- |
| **Description** | **Amount** |
| Court Filing Fees | $400.00 |
| Service of Process Fees | $90.00 |
| TransUnion TLO/Accurint Database Fees | $135.00 |
| Teleconferencing Costs | $45.60 |
| Mediation Expenses | $825.00 |
| Discovery Database Fees | $487.35 |
| Docket/Pacer/Lexis/Bloomberg Fees | $173.78 |
| Postage/FedEx/DocuSign/Courier Costs | $91.00 |
| **Total =** | **$2,247.73** |

59. These reasonable expenses, which are summarized in the above chart, were incidental and necessary to this litigation and, therefore, should be reimbursed in their entirety.

14

60. Filed contemporaneously herewith is the Parties' December 14, 2020 Stipulation and [Proposed] Order Approving the Settlement and Dismissing the Case, executed by all Parties.

I declare, pursuant to 28 U.S.C. § 1746 under penalty of perjury, that the foregoing is true, accurate, and correct.

Executed on December 14, 2020 in New York, New York.

*[signature]*

Innessa M. Huot